# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI



SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

OCT - 9 2024

ARTHUR JOHNSTON

BY _____ DEPUTY

---

RICHARD ARJUN KAUL, MD;
JANE DOE; JOHN DOE.

Plaintiff

v.

JAMES PAUL OETKEN
(PERSONAL AND OFFICIAL CAPACITY)
MISSISSIPI MEDICAL BOARD;
NEW YORK STATE ATTORNEY GRIEVANCE COMMITTEE
JANE DOE; JOHN DOE.

Defendants.

---

CIVIL ACTION  NO.: 3:24-cv-621-
CWR-LGI

COMPLAINT

2

# CONTENTS

PARTIES – Page 4

RELEVANT/REFERENCED CASES OF 'THE KAUL CASES' – Page 5

JURISDICTION + VENUE – Page 6

PRELIMINARY STATEMENT + BASIS FOR SUIT AGAINST DEFENDANTS OETKEN/MMB/NYS AGC – Page 8

DEFENDANT OETKEN'S CORRUPTION OF THE UNITED STATES DISTRICT COURT + CAUSE FOR HIS IMPEACHMENT – Page 12

DEPRIVATION OF ANY/ALL IMMUNITIES – Page 15

STATEMENT OF FACT + DEFENDANT OETKEN'S RULE 8(b)(6) ADMISSIONS OF FACT – Page 17

LEGAL CLAIMS – Page 29

DECLARATIONS AND RELIEF SOUGHT – Page 52

# PARTIES

**PLAINTIFF**

RICHARD ARJUN KAUL, MD – 6 NORTH MIDLAND AVENUE, NYACK , NY 10960
DRRICHARDKAUL@GMAIL.COM **("PLAINTIFF KAUL")** – 914 250 84313

**DEFENDANT**

MISSISSIPPI MEDICAL BOARD – 1867 CRANE RIDGE DRIVE # 200N, JACKSON, MISSISSIPI 39216
**("DEFENDANT MMB")** – 601 987 3079

JAMES PAUL OETKEN, ESQ – ROOM 706, 40 FOLEY SQUARE, NY, NY 10007 ("**DEFENDANT
OETKEN"**) – 212 805 0266

NEW YORK STATE ATTORNEY GRIEVANCE COMMITTEE – 180 MAIDEN LANE, 17TH FLOOR, NY, NY
10038 **("DEFENDANT AGC")** – 212 401 0800

4

# RELEVANT/REFERENCED CASES OF 'THE KAUL CASES'

**K1:** KAUL v CHRISTIE: 16-CV-02364

**K3:** KAUL v SCHUMER: 10-CV-13477

**K11-3:** KAUL v ALLSTATE: 21-CV-00736

**K11-7:** KAUL v. ICE ET AL: 21-CV-6992

**K11-10:** KAUL v. ICE ET AL: 23-CV-2016

**K11-11:** KAUL v BCBS: 23-CV-00518

**K11-14:** KAUL v. FEDERATION ET AL: 23-CV-22325

**K11-15:** KAUL v. CHRISTIE/MURPHY: 23-CV-22582

**K11-17:** KAUL v CPEP: 23-CV-00672

# JURISDICTION + VENUE

General:
**1.** 28 U.S.C. § 1331 – Plaintiff's allegations arise pursuant to Section 1983 claims of violations of Plaintiff Kaul's Constitutional rights and U.S.C. § 1964(a)(b)(c)(d) and 1962.

U.S.C. § 1337 – Plaintiff's allegations allege violations of an Act of Congress regulating commerce and monopolies.

Personal:
**2.** The Court has personal jurisdiction over Defendants Oetken/MMB/NYS AGC as they has transacted business, maintained substantial contacts through the Federal Judges Association, and/or committed acts in furtherance of the illegal scheme and conspiracy throughout the United States, including in this district.

**3.** Additionally, the Defendants RICO violations/offenses/crimes have caused and continue to cause injury to Plaintiff Kaul's life/liberty/property in every state in the United States including the State of Mississippi.

**4.** Defendants scheme and conspiracy have been directed at and have had the intended effect of causing injury to persons residing in, located in, or doing business throughout the United States including the Southern District of Mississippi. This Court also has personal jurisdiction over all Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A) because they would be subject to a court of general jurisdiction in Mississippi.

**5.** <u>More specifically, Defendant Oetken has violated and continues to violate the principles and holdings set forth by the U.S.C.A for the Fifth Circuit (May 18, 2022) and SCOTUS (June 27, 2024) in SEC v Jarkesy: 22-859</u>

Venue:

6

**6.** 28 U.S.C. § 1391(b)(1) – A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located and (2) <u>a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated</u>.

**7.** Defendant Oetken's K11-7 September 12, 2022 purported 'injunction' (**<u>Exhibit 1</u>**) and his K11-20 October 2, 2024, threat to hold Plaintiff Kaul in contempt if by October 16, 2024, Plaintiff Kaul does not dismiss K11-20, <u>AND</u> the K11-20 Defendants filing on October 3, 2024 of Defendant Oetken's October 2, 2024 threatening 'ORDER' (**<u>Exhibit 20</u>**) do constitute a substantial and ongoing injury and violation of Plaintiff Kaul's human/civil/constitutional right to vindicate and or secure his right to his life/liberty/property/reputation <u>WITHIN</u> the jurisdiction of the U.S.C.A. for the 5th Circuit that confers on Plaintiff Kaul the right to sue Defendants Oetken/MMB/NYS AGC in this district.

# PRELIMINARY STATEMENT + BASIS FOR SUIT AGAINST DEFENDANTS
# OETKEN/MMB/NYS AGC

**8.** In 2005, Plaintiff Kaul invented and successfully performed the first outpatient minimally invasive spinal fusion, a case/technique that revolutionized the field of spine surgery and has been for many years the standard of care.

**9.** This event and the consequent success caused Plaintiff Kaul's physician/hospitals/insurance competitors in the minimally invasive spine surgery market to view him, his outpatient surgical center, his technique, and his technique invention as a threat to their market share, and not being able to compete fairly/legally, did resort to committing judicial corruption/political corruption/public corruption/ bribery/perjury/evidential falsification/witness tampering/obstruction of justice/kickbacks/wire fraud/mail fraud/false indictments/false arrests/false imprisonment/kidnapping/attempted drugging-killing.

**10.** These events occurred over a time period from 2005 to 2023, in conjunction with ongoing/accruing and daily recurring and **"new"** violations of Plaintiff Kaul's human/civil/constitutional rights. In causing the 2012/2014 illegal suspension/revocation of Plaintiff Kaul's NJ license, **The Kaul Cases** Defendants committed a theft of Plaintiff Kaul's intellectual property, from which have been generated/continue to be generated hundreds of millions, if not billions of dollars.

**11.** The above facts, in conjunction with those contained within the factual corpus of **The Kaul Cases** substantiate ongoing violations to a criminal standard of Plaintiff Kaul's fundamental right to life/liberty/property, his right to his hard-earned reputation and specifically, violations of his human/civil/constitutional rights.

**12.** The District of Mississippi has jurisdiction over all Defendants for reasons more fully enunciated below, but in summary, all Defendants, including **The Kaul Cases** Defendants have

8

violated, caused to violate and or aided and abetted the ongoing violation of Plaintiff Kaul's human/civil/constitutional rights in every state in the United States including the State of Mississippi.

**13.** The factual foundation of K11-23 consists of fact admitted in **The Kaul Cases (2016-2024)** pursuant to Rule 8(b)(6) and includes amongst other things, bribery/perjury/kidnapping/false indictment/false arrest/false imprisonment/wire fraud/public corruption/judicial corruption/witness tampering/evidence tampering/obstruction of justice.

**14.** On September 12, 2022, in K11-7 Defendant Oetken, after having entered into an admitted bribery related quid pro quo scheme (**Exhibit 2 + Exhibit 3**) with the K11-7 Defendants, did enter a purported nationwide 'injunction' that sought to prevent Plaintiff Kaul from seeking redress for the illegal 2014 revocation of his NJ medical license, more facts of which are detailed below.

**15.** From February 22, 2016 (K1) to the present (K11-20), Plaintiff Kaul's efforts to prosecute his claims have been obstructed by the Defendants violation of discovery orders and schemes of judicial corruption in courts located principally in the NY/NJ area.

Defendant Oetken sits on the bench in the S.D.N.Y,

**16.** However, from June 2023 judges in the Southern District of Florida, the Eastern District of North Carolina and now the Southern District of Texas did progressively advance **The Kaul Cases** in full knowledge of all the circumstances/events/facts surrounding Defendant Oetken's knowingly illegal September 12, 2022, purported 'injunction'.

**17.** In fact, and after the 5th Circuit/SCOTUS rulings in <u>Jarkesy</u>, U.S.D.J. Alfred H. Bennet did on August 30, 2024, enter a Rule 26 order which Defendants have violated and continue to violate.

9

**18.** In furtherance of their obstruction of justice scheme they once again coopted Defendant Oetken into issuing a purported 'order; that threatened to hold Plaintiff Kaul in contempt of he did not dismiss K11-20 by October 16, 2024.

**19.** Defendant Oetken had been complicit in an identical and prior scheme in K11-17, when in collusion/conspiracy with the K11-17 Defendants, who then became the K11-20 Defendants, he issued a similar edict on March 15, 2024 (**Exhibit 6**) two (2) days after Chief Judge Richard E. Meyers entered a Rule 26 order of discovery.

**20.** Defendant Oetken's misconduct is unprecedented in American jurisprudence, and he seeks, through his threats to Plaintiff Kaul, to usurp the authority of every other district judge in the United States.

**21.** The logical extension of such misconduct is that every district judge, for whatever reason, could issue nationwide injunctions in which they positioned themselves as the arbiters and 'gatekeepers' of the entire federal judiciary.

**22.** Defendant AGC is included as it permitted itself to become part of Defendant Oetken's bribery related quid pro quo scheme in mid 2024, when it failed, upon Plaintiff Kaul's ethics complaint, to investigate Defendant Oetken's violations and crimes of accepting bribes in return for illegally selling the power and authority of the United States District Court to **The Kaul Cases** Defendants (**Exhibit 9**).

**23.** Defendant AGC, in failing to investigate or otherwise refer Defendant Oetken to prosecutorial authorities did become complicit in his crimes, and pursuant to RICO is as liable for all of his past/present/future violations as if it had directly committed them.

10

24. Defendant MMB is included as its 2020/2024 denials of Plaintiff Kaul's applications for medical licensure based on the 2014 illegal NJ revocation did cause and continue to cause injury to Plaintiff Kaul in the State of Mississippi.

25. Other than the illegal injuries in Mississippi, there exists a factual nexus between Defendant MMB and Defendants Oetken/AGC in that had justice been properly served in K11-7, the illegal 2014 NJ revocation would have been reversed, the reversal of which would have caused the grant of Plaintiff Kaul's 2024 application to the Mississippi Medical Board.

26. Had these events occurred, there would have commenced a relative remediation to the immense ongoing/"**new**" twelve-years-plus (2012-2024) of injuries to Plaintiff Kaul's life/liberty/property/reputation.

27. But because Defendant Oetken continued and aided and abetted the knowingly illegal continuation of <u>**The Kaul Cases**</u> Defendants corruption through the United States District Court, and because Defendant AGC failed to investigate his crimes (<u>**Exhibit 12 + Exhibit 13**</u>) these Defendants are proximately and willfully liable for the ongoing/"**new**" injuries to Plaintiff Kaul's life/liberty/property/reputation.

# DEFENDANT OETKEN'S CORRUPTION OF THE UNITED STATES DISTRICT COURT + CAUSE FOR HIS IMPEACHMENT

**28.** The central issue in this case pertains to the blatant disrespect of a democratically appointed district judge in the S.D.N.Y. for the SCOTUS principles and holdings of the seminal case of <u>SEC v Jarkesy: 22-859</u> (June 27, 2024) and his willful failure to recognize that the application of this law to a case he had adjudicated on September 12, 2022, did render his opinion/order null and void, an opinion/order that he admitted were the product of a quid pro quo scheme of bribery with the defendants in that case.

**29.** Defendant James Paul Oetken, did, in period commencing in or round August 2021 enter in to a racketeering conspiracy with the K11-7 Defendants, in which he participated in the conversion of his bench/court into a **"racketeering enterprise"** through which he and his defendant co-conspirators perpetrated a **"pattern of racketeering"** through his court of amongst other things, the commission of the RICO predicate acts of bribery/public corruption/wire fraud/obstruction of justice.

**30.** The purpose of these RICO violations were to injunct Plaintiff Kaul from seeking justice/truth within the United States District Court as to all the facts preceding, surrounding and underpinning the illegal 2012-214 suspension/revocation of his NJ license, a revocation that has since 2012 deprived Plaintiff Kaul of his life/liberty/property/reputation and caused ongoing/"new" violations of his human/civil/constitutional rights.

**31.** Defendant Oetken, in conjunction with Defendant AGC and his co-conspirators in the New York region has acted with a sense of impunity in the belief that his criminal conduct on the bench and its conversion into a **"racketeering enterprise"** would go un-exposed and un-punished.

**32.** It was his sense of omnipotence that caused him to disregard and indeed violate his legal obligations as to the law set forth in <u>Jarkesy</u>, effectively viewing an historical ruling from the

U.S.C.SA. for the 5th Circuit and SCOTUS as a ruling whose holdings and principals he, as a democratically appointed New York judge was obliged to ignore and or violate.

33. Defendant Oetken sits in a court less than two (2) miles from Wall Street, the home of the SEC and the NYSE on which **The Kaul Cases** Defendant Allstate Insurance Company extracts billions from the American public. It is in this incestuous financial world milieu that Defendant Oetken operates his highly lucrative schemes, in which he sells his bench to the highest bidder in each case, even if those cases involve evicting persons from properties owned by his Wall Street bank co-conspirators.

34. Defendant Oetken has for decades conducted these criminal schemes under the purported cover of judicial immunity and the protection of his political sponsors and Defendant AGC, the latter an agency tasked with investigating and policing corrupt lawyers, but an agency that has facilitated Defendant Oetken's long-standing **"pattern of racketeering"**. Defendant Oetken has been able to 'stay under the radar' for so long consequent to the fact that no lawyer has been willing to expose his criminal activities, despite their obligation to do so.

35. However, arguably the most reprehensible part of Defendant Oetken's delusion of omnipotence has been his interference in the affairs of district courts from the 4th and 5th Circuits, in which he has threatened Plaintiff Kaul with sanctions/contempt if he did not dismiss cases that district judges in those circuits admitted with full knowledge of Defendant Oetken's September 12, 2022, purported 'injunction'.

36. Defendant Oetken seeks to indirectly establish authority over every district judge in the United States District Court with threats against Plaintiff Kaul, and in fact these threats continue despite his knowledge that the SCOTUS ruling in Jarkesy, has for the legally substantiated reasons stated in K11-20, invalidated his September 12, 2022, purported 'injunction', but reasons/law he continues to violate, while siting on the federal bench.

13

**37.** Defendant Oetken's crimes/violations evidence a contemptuous and complete disregard for the authority of every other district judge and court within the United States District Court, including the Justices of the U.S.C.A. for the 5th Circuit and those of the Supreme Court of the United States.

**38.** It is for these reasons and others that  U.S.D.J. Oetken must be removed from the federal bench, his case referred to the Senate Judiciary Committee and he be ordered to cease and desist from any further interference in the affairs of other district courts and their judges.

## **DEPRIVATION OF ANY/ALL IMMUNITIES**

**39.** Defendant Oetken became deprived of any immunity the moment he commenced conspiring with the K11-7 Defendants in the conception, development, and perpetration of the quid pro quo schemes, as detailed in K11-17 (**Exhibit 4**).

**40.** Defendant Oetken has knowledge of the facts of K11-17. This is evidenced in Defendants Christie/Solomon/Heary's private letter to him (**Exhibit 5**) and by his own admission in his March 15, 2024 'ORDER': **"The Court has learned …"** although Defendants Christie/Solomon/Heary's January 19, 2024, letter was privately addressed to Defendant Oetken, and not the Clerk of the Court nor any other judges within the **"Court".**

**41.** Defendant Christie/Solomon/Heary's letter is not published to the SDNY docket, and neither their names nor the letter is referenced on the docket nor in Defendant Oetken's March 15, 2024 'ORDER', as just further evidence of Defendant Oetken's **"pattern"** of illegal exparte violations. Defendant Oetken's March 15, 2024 'ORDER' is arguably without the authority of the Court and constitutes a violation of U.S.C. Section 1018 and the Judiciary Act of 1789.

**42.** Defendant Oetken, with knowledge of the K11-17 facts of his crimes at a time no later than January 19, 2024, has continued to fail to submit an affidavit into K11-17 denying the facts of the quid pro quo schemes/evidential falsification/perjury and other acts of public corruption. His non-denial caused the admission of these facts, facts of felonies and felonies that deprive him of any immunity.

**43.** Defendant Oetken's guilt accounts for both his admission of fact and the failure of the K11-17 Defendants to cause the submission of affidavits from the New York State Ethics Committee, the Judicial Disciplinary Council, and any other judge within the SDNY, as to Defendant Oetken's refuting that Defendant Oetken engaged in criminal schemes with the K11-7 Defendants.

15

**44.** Defendant Oetken's guilt and his recognition of his guilt account for his March 15, 2024, effort to attempt to coerce Plaintiff Kaul under threat of contempt into dismissing K11-17, in order to attempt to suppress the inevitable March 13, 2024, related K11-17 DISCOVERY ORDER emergence of further evidence of his guilt, that would place him at risk of criminal indictment. Defendant Oetken's fraudulent March 15, 2024, order in K11-7 was entered on to the docket in K11-17 on March 18, 2024 (**Exhibit 7**).

**45.** As with Defendant Christie, Defendant Oetken's scheme in attempting to hatch plots to jail/kill/silence does nothing but further evidence his crimes, crimes for which, like Edward Manton (**Exhibit 5**), he lacks immunity.

# STATEMENT OF FACT + DEFENDANT OETKEN'S RULE 8(b)(6) ADMISSIONS OF FACT

**46.** Plaintiff Kaul respectfully asserts that a chronologically organized statement of fact will most effectively and with greatest clarity illustrate the perversion of justice committed by Defendant Oetken and his co-conspirators, many of whom are defendants in K11-20 actively obstructing/violating the authority of the U.S.D.C. for the S.D.T.

**47.** Pursuant to RICO's doctrine of vicarious liability each Defendant is as liable for the violations/offenses/injuries of every other Defendant as if they directly caused the violations/offenses/injuries. See <u>Salinas v US: 522 US 52 (1997)</u>

<u>**2003 – 2013:**</u>

**48.** In late February/early March 2005, Plaintiff Kaul invented and successfully performed the first outpatient minimally invasive spinal fusion, the facts of which are detailed in K11-20. Consequent to this invention, Plaintiff Kaul earned immense professional and commercial success, which caused jealousy amongst his market competitors who unable to compete with him fairly did commence conspiring with the then NJ Governor and now Defendant Christie.

**49.** The conspiracy involved the perpetration of a series of quid pro quo schemes in which Plaintiff Kaul's competitors funneled bribes to Defendant Christie in return for having him abuse his state executive power to order **The Kaul Cases** Defendant, New Jersey Board of Medical Examiners to manufacture a knowingly false case to cause the illegal suspension-revocation of Plaintiff Kaul's license in 2012/2013.

**50.** **The Kaul Cases** Defendants, of which the K11-20 Defendants are members, did seek not only to cause a license revocation, but sought to permanently eliminate Plaintiff Kaul by attacking every element of his life/liberty/property/reputation, such that his existence would

cease, and he would never expose their crimes. Their scheme failed and Plaintiff Kaul did, in late 2013 commence collecting evidence of the crimes/violations of The Kaul Cases Defendants.

**2013 – 2016:**

**51.** Consequent to the revocation and the widespread malicious publicity surrounding the events, Plaintiff Kaul was forced into a state of poverty/homelessness and became obliged to file on June 17, 2013, for Chapter 11 bankruptcy for his four (4) healthcare related businesses.

**52.** On July 21, 2014, the Chapter 11 proceeding was converted to a Chapter 7 liquidation consequent to final order of license revocation on March 24, 2014. The entire revocation proceedings, as detailed in K11-20 were the product of corruption and were corrupt.

**53.** The principal purpose of the corruption was to cause the elimination of the competitive threat posed by Plaintiff Kaul to his competitors in the minimally invasive spine surgery market, that included neurosurgeons/hospitals/insurance companies., all of whom illegally profited from the elimination of Plaintiff Kaul.

**54.** Having had his license revoked in 2014 and illegally deprived of his career (1983-2012), his entire estate and his reputation, Plaintiff Kaul, after much contemplation, decided not to leave the United States and his two (2) young children, but to stay, teach himself the law and seek to have exposed the truth of the crimes of **The Kaul Cases** Defendants. And so, on February 22, 2016, Plaintiff Kaul filed K1 in the Southern District of New York, from where it was on April 16, 2016, transferred to the District of New Jersey over Plaintiff Kaul's objections.

**2016-2022:**

**55.** In this period, Plaintiff Kaul did, in a continued state of poverty, continue to file claims in various district courts based on the national injury caused to his medical career and inability to procure a license in any state except that of Pennsylvania, wherein his application was granted on May 27, 2021, but on condition he find a PA licensed physician willing to periodically

monitor his practice, a condition rendered impossible consequent to the malicious and widely publicized articles/stories propagated within the New York-New Jersey-Pennsylvania area.

56. As such and despite concerted efforts Plaintiff Kaul was unable to find such a person and his letters to the PA medical board seeking to have the board conduct the monitoring were ignored. From February 22, 2016, after having acquired sufficient knowledge of the law, Plaintiff Kaul filed multiple lawsuits in the United States District Court, most of which were transferred to the District of New Jersey, where they were stayed and or voluntarily dismissed, with the non-transferred cases being cases in which Plaintiff Kaul was not permitted to commence discovery.

57. In the period from 2016 to 2024, not one fact has been denied by any of the defendants, the courts (K5/K11-14/K11-15/K11-17/K11-20) in which discovery orders were issued, the Defendants did violate these orders and harass/intimidate/corrupt the judges into staying and or dismissing cases in which they had entered discovery orders.

58. On May 27, 2021, Plaintiff Kaul was kidnapped by a group of nine armed men at his place of residence/work in New Jersey, under orders from Defendant Christie, who had been served a Summons/Complaint in K11-2 at his law office in Morristown, NJ, and who mistakenly believed it would intimidate Plaintiff Kaul into ceasing his prosecution of **The Kaul Cases**. It did not and Plaintiff Kaul continued.

59. The kidnapping scheme failed and Plaintiff Kaul' person was abandoned at a hospital by two police officers who rapidly disappeared. The events were memorialized in an affidavit filed by Plaintiff Kaul on May 28 in K11-2. No person as of yet has been criminally prosecuted for this crime.

60. On August 19, 2021, Plaintiff Kaul filed K11-7. Summonses were issued and briefing was conducted up until February 2022. On September 12, 2022, Defendant Oetken issued an

opinion/order in which none of Plaintiff Kaul's arguments were analyzed and in which none of the highly incriminating evidence of the crimes of **The Kaul Cases** Defendants was either acknowledged, referenced and or critically incorporated into his knowingly fraudulent opinion.

**61.** The reason that Defendant Oetken so blatantly abused the power of the United States District Court pertained to the quid pro quo scheme that he had, in collusion/conspiracy with **The Kaul Cases** Defendants perpetrated in the United States District Court, thus converting it into a **"racketeering enterprise"**.

**62.** On September 12, 2022, Defendant Oetken entered a knowingly fraudulent purported 'injunction' onto the federal docket, that sought to permanently bar Plaintiff Kaul from seeking restitution for the criminally perpetrated immense and ongoing/**"new"** injuries to his life/liberty/property/reputation.

**63.** Defendant Oetken unilaterally set himself up as the nationwide arbiter of the decision of every other judge in the United States District Court as to whether or not they could exercise their independent judgment in accepting cases filed by Plaintiff Kaul, cases that were factually and legally distinct to K11-7.

**2023-2024:**
**64.** K11-17 was filed on November 20, 2023, in the U.S.D.C. for the E.D.N.C. and enclosed principally with **Exhibit 14** were all documents submitted by Defendant Oetken in relation to Plaintiff Kaul, and all documents submitted by Plaintiff Kaul in relation to Defendant Oetken in the period commencing on September 12, 2022.

**65.** On March 13, 2024, the E.D.N.C. subsequent to five (5) months-worth of briefing and knowledge of all documents pertaining to Defendant Oetken's violations/abuse of the power of the United States District Court, did enter an ORDER FOR DISCOVERY PLAN (K11-17: D.E. 65), an order that was violated by the K11-17 Defendants consequent to their prior **"pattern"** of

perpetrating a scheme of judicial corruption/harassment/intimidation purposed to have the case either stayed and or dismissed.

**66.** Regardless, on April 12, 2024, Plaintiff Kaul submitted a 'REPORT OF THE PARTIES PLANNING MEETING', in which he informed the district court of the Defendants violation of the March 13, 2024 'ORDER FOR DISCOVERY PLAN' and on April 18, 2024, submitted 'PLAINTIFF KAUL'S REQUEST FOR THE COURT TO TAKE JUDICIAL NOTICE PURSUANT TO FEDERAL RULE OF EVIDENCE 201, OF DOCUMENTS RELEVANT TO DEFENDANT FEDERATION OF STATE MEDICAL BOARDS' (K11-17: D.E. 94).

**67.** The latter document is irrefutable proof of the fact that state medical boards are not sovereign entities but are in fact subjugate elements of the for-profit entity of Defendant FSMB or as pled by Plaintiff Kaul within **The Kaul Cases**, the **"Federation Cartel" ("FC")**.

**68.** This cartel, one that has taken decades to establish, illegally confers absolute antitrust power on the **"FC"** over, amongst other things, the entire system of so called 'physician regulation and disciplining from which it reaps billions in profit. The **"FC"** aggressively conducts quid pro quo schemes with hospital/insurance/pharmaceutical corporations, and uses its power to terminate physicians who either fail to support or oppose the corporate profiteering agendas of the **"FC"** hospital/insurance/pharmaceutical corporations quid pro quo conspirators.

**69.** It achieves these terminations (read executions) by disseminating orders to its subjugate state medical boards to revoke the targeted physicians' licenses and obstruct their efforts to have those licenses reinstated and or new license issued.

**70.** Thus, pursuant to RICO's doctrine of vicarious liability pursuant to Salinas, the acts/offenses/violations of one state medical board become the liability of all subjugate state medical boards of the **"FC"**. **"The crime of one becomes the crime of all"**

71. And so, a violation of a physicians' human/civil/constitutional rights in one state causes him an injury in all states, which thus provides him standing to bring suit in any/all states.

72. **The Kaul Cases** represent an existential threat to the **"FC"**, which accounts for the lengths to which it and **The Kaul Cases** Defendants have gone to attempt to cause the elimination of Plaintiff Kaul (kidnapping/false indictment/false arrest/false incarceration/attempted killing).

73. Similarly, it accounts for the fact of their corruption of certain members of the politico-judicial bodies to attempt to prevent Plaintiff Kaul from further exposing their decades-long corporate-profit driven crimes against the American public and medical profession.

74. Defendant Oetken is simply one of the more recent public servants to have gotten snared in their 'net of corruption', a 'net' into which he willingly entered in the belief the 'net' would restrict Plaintiff Kaul but never imagining that the net would entrap him and his co-conspirators.

75. However, and arguably the 'spark' that lit the fundamental/illegal structure of the **"FC"** was respectively the May 18, 2022, and June 27, 2024, opinions/orders of the U.S.C.A. for the 5th Circuit and SCOTUS in Jarkesy, which established, as pled in K11-20 (----) that the jury-less article III judge free NJ administrative April 2, 2012, suspension and March 24, 2014, revocation were/are illegal.

76. **The Kaul Cases** Defendants, and particularly the lawyer defendants, recognized these facts as some of many of the knowing illegality of their revocation scheme, but calculated Plaintiff Kaul would be eliminated, and Plaintiff Kaul would never expose the scheme.

77. But when Plaintiff Kaul commenced litigation on February 22, 2016, **The Kaul Cases** Defendants conviction of their impunity began to shudder and so they embarked on grand schemes of politico-judicial corruption, again convinced they would prevent the emergence of

further evidence of their crimes and of the ever-expanding conflagration of their criminal conspiracy.

78. However, recognizing in or about 2021 that simple quid pro quo bribery schemes were insufficient, they had Plaintiff Kaul kidnapped/arrested/jailed and realized that the dollar-value of the bribes had to be of sufficient value to have a district judge not only dismiss the case but enter a nationwide injunction purporting to prevent Plaintiff Kaul from seeking restitution for the past ongoing/"new" injuries to his life/liberty/property/reputation, without first obtaining the permission of such a judge willing to take such a risk of criminal conspiracy.

79. That judge was Defendant Oetken, a resident of the most expensive part of Manhattan (Chelsea) whose daily living expenses/lifestyle require more than a federal judge's salary does permit. Defendant Oetken sits on many cases involving financial corporations, and treats these cases as personal profit generators.

80. Defendant Oetken, recognizing the illegality of his 'injunction' scheme and of his having entered an un-exit-able criminal conspiracy, did quickly succumb to the K11-17 Defendants demand consequent to the March 23, 2024 'ORDER OF DISCOVERY' that he issue an 'order' threatening to hold Plaintiff Kaul in contempt if he did not dismiss K11-17 by March 29, 2024. The K11-17 Defendants threatened Defendant Oetken with exposing his crimes/professional ruin if he failed to comply with their demand.

81. Plaintiff Kaul sued Defendant Oetken in K11-18 on March 25, 2024, in the U.S.D.C. for the E.D.N.C. for all of the human/civil/constitutional rights violations pled in K11-23. Defendant Oetken's failure to deny the facts/allegations did, pursuant to Rule 8(b)(6) cause these facts to become admitted for all purposes (**Exhibit 8).**

82. The reason for Defendant Oetken's non-denial of the facts in K11-18 was his guilt of those allegations/facts, facts that he had admitted on October 6, 2022 (**Exhibit 3)** and then on August

14, 2023, when he belatedly and summarily denied Plaintiff Kaul's October 6, 2022, motion for his disqualification, without denying the facts substantiating that disqualification (**Exhibit 4**).

**83.** Defendant Oetken has denied none of the charges levied against him by Plaintiff Kaul in the period from September 14, 2022, to the present, including those on March 25, 2024, in K11-18.

**84.** Defendant Oetken is guilty of, amongst other things, of having abused the authority and power of the United States District Court to conduct a **"pattern of racketeering"** within the S.D.N.Y. and to attempt to then perpetrate the products of that fraud through every other district court in the United States District Court, by threatening Plaintiff Kaul with contempt if he fails to dismiss cases accepted and adopted by fully informed district judges in those courts.

**85.** On August 26, 2024, Plaintiff Kaul in filing K11-20 in the Southern District of Texas, did inform the court and district judges of all the circumstances/events/facts surrounding the September 12, 2022, purported 'injunction' and affairs associated with Defendant Oetken. Based on these representations and other facts of immense substance and relevance, the U.S.D.C. for the S.D.T did accept the case, issue summonses and an 'ORDER FOR CONFERENCE AND DISCLOSURE OF INTERESTED PARTIES' on August 30, 2024 (**Exhibit 15**).

**86.** The K11-20 Defendants have violated and continue to violate this order while attempting to secretively scheme with Defendant Oetken to have Plaintiff Kaul's person physically restrained (**Exhibit 16 + Exhibit 19**) in order to prevent him appearing for the scheduled November 4, 2024 'INITIAL PRETRIAL AND SCHEDULING CONFERENCE' (**Exhibit 18**). Plaintiff Kaul, in randomly checking the court dockets on October 3, 2024, came to know of the K11-20 Defendants clandestine scheme with Defendant Oetken , and then emailed Defendants a copy of his letter to the S.D.T. judicially noticing it of Defendants letters to Defendant Oetken. This prompted the K11-20 Defendants to submit their secretively filed letters to Defendant Oetken with the S.D.T. just before Plaintiff Kaul filed his judicial notice (**Exhibit 17**), in order to attempt to cover-up their scheme to keep Plaintiff Kaul unaware of Defendant Oetken's October 2, 2024 'order' until

he was arrested/jailed on October 17, 2024, thus keeping him from appearing at the Scheduling Conference on November 4, 2024 (**Exhibit 18**), a move Defendants hoped/believed would cause dismissal of K11-20.

**87.** Defendant Oetken's critical participation in the knowingly illegal September 12, 2022, purported 'injunction' scheme has severely compromised his ability to independently function as a judge within the United States District Court, and as such should be removed from the federal bench.

**88.** And it is Defendant Oetken's recognition of the desperate situation into which he caused his irreversible admission, that accounts for his second threat to attempt to hold Plaintiff Kaul in contempt for allegedly violating an order that he and the K11-20 Defendants know is illegal and the product of a massive bribery related 'Fraud on the Court'.

89. Further bolstering his knowledge of his guilt is the fact that in K11-18 his non-denial of the facts of his crimes did cause their admittance for all purposes pursuant to Rule 8(b)(6). Defendant Oetken would have been better advised to admit or deny the K11-18 facts and attempt to shift the quid pro quo liability onto **The Kaul Cases** Defendants.

**90.** Instead, not only have most of those Defendants admitted in K11-20 to facts of their guilt, but Defendant Oetken's Rule 8(b)(6) admission of the facts of his guilt in K11-18 was unqualified and with acceptance of complete liability, regardless of its procedural dismissal on April 8, 2024 (**Exhibit 10**).

**91.** In fact, it is Defendant Oetken's K11-18 admittance of guilt, acceptance of complete liability and the lack of any defense, that establishes his guilt in K11-23 and an admittance of undisputed fact sufficient for Summary Judgment on all counts.

# LEGAL CLAIMS

## 1. COUNT ONE

**Association-In-Fact Enterprise: U.S.D.C.-S.D.N.Y.-State of New York-NYSE ("USN- Association-In-Fact Enterprise")**

**Defendant Persons: Mississippi Medical Board/New York State Attorney Grievance Committee/James Paul Oetken**

**Co-conspirators: TD Bank/Geico/Grewal**

**RICO Predicate Acts: Bribery/Wire Fraud/Obstruction of Justice/Public Corruption**

**Overview:**

92. In a period commencing in or around August 2021, Defendant Oetken did enter a conspiracy with, amongst others, co-conspirators TD Bank/Geico/Grewal, the agreed purpose of which was to cause the knowingly illegal dismissal of K11-7 with prejudice and the entry of a purported nationwide 'injunction' that sought to prevent Plaintiff Kaul from filing any further complaints/petitions/documents in the United States District Court related to the **"denial [not revocation] of his medical license"** and or litigation proceedings initiated by either the K11-7 Defendants or Plaintiff Kaul **"before" [not after]** September 12, 2022.

93. Defendant Oetken's purported 'injunction' as admitted in K11-18 in a period from March 25 to April 8, 2024, was the product of a bribery related quid pro quo scheme in which Defendant Oetken did, in collusion/conspiracy with his co-conspirators convert the U.S.D.C. for the S.D.N.Y. into an **"association-in-fact racketeering enterprise"** through which he and his co-conspirators perpetrated a **"pattern of racketeering"** through the commission of the knowingly illegal RICO predicate acts of bribery/public corruption/obstruction of justice/wire fraud.

**94.** Defendant Oetken's guilt in K11-23 is consequent to his Rule 8(b)(6) admissions of fact as to his failure to deny the facts in K11-18 and or raise any defense, be it qualified/sovereign/absolute immunity and or claim sufficiency. Res judicata provides no defense to admitted facts regardless of the final case disposition, for the facts are an entity separate from any non-substantive procedural basis for a dismissal.

**95.** In K11-18, Defendant Oetken became aware of the Complaint on or about March 27, 2024, and could have voluntarily entered the case and denied the facts, but he did not, because he was/is guilty of the levied charges/facts.

**96.** In fact, he could even have sought permission from the U.S.C.A. for the 4th Circuit to enter the appeal, but he did not, as further evidence of his guilt, and of his attempt to corruptly manipulate the U.S.C.A. for the 4th Circuit into affirming the dismissal of K11-18.

**97.** Defendant Oetken did not anticipate that Plaintiff Kaul would dismiss the K11-18 4th Circuit appeal and did neither anticipate the filing of K11-20 within the U.S.C.A. for the 5th Circuit, the Circuit from which the seminal ruling in <u>Jarkesy</u> emerged, the principles of which rendered/render illegal the 2014 NJ revocation, all of its legal sequalae and every opinion/order that was based on and or incorporated the illegal 2014 jury-less article III judge free revocation, including the K11-7 September 12, 2022 purported 'injunction'.

**98.** These facts are known to Defendant Oetken, as he was provided a copy of the K11-20 Complaint by Defendants FSMB/Allstate, and knows these facts to be admitted consequent to his knowledge of the K11-20 Defendants Rule 8(b)(6) \failure to deny the facts, thus causing their admission for all purposes.

**99.** However, despite having admitted facts of his crimes in K11-18 and knowing of the K11-20 Defendants admission of facts of their crimes, and of his conflicted lack of authority in matters as to Plaintiff Kaul, he did, in knowing violation of civil/criminal law abuse the authority of the

United States District Court to attempt, in a knowingly illegal manner, threaten Plaintiff Kaul with contempt if he did not dismiss K11-20.

**100.** Defendants MMB/AGC liability stems in part respectively from their 2024 denial of Plaintiff Kaul's license application to the MMB (**Exhibit 11**) and Defendant AGC's complicity in their failure to investigate Defendant Oetken's bribery related  quid pro quo scheme with **The Kaul Cases** Defendants.

**101.** Had Defendant AGC investigated Defendant Oetken's crimes and or referred the matter to prosecutorial authorities, the illegality of the 2014 NJ revocation would have been fully exposed as would have Defendant Oetken's illegal abuse of the power/authority of the United States District Court, the net result which would have been a 'turning of the clock' back to 9 am EST on April 2, 2012, and rectification/remediation/compensation of every injury to Plaintiff Kaul's life/liberty/property/reputation.

**102.** However, of greater import would be a reformation of the state medical board system to bring it into compliance with the Seventh Amendment related ruling in <u>Jarkesy</u>, in which the SEC has been forced to comply, a compliance that constitutes precedent for the same reformation of American state medical boards.

**103.** The corrupt vigor with which **The Kaul Cases** Defendants have contested the claims (2016-2024) is partly explained by their realization of the illegality of what the crimes they committed against Plaintiff Kaul (2005-2024), and of the immense/detrimental material consequences to their profiteering and imposition of 'fines' against innocent, principally ethnic minority physicians.

**104.** In essence, **The Kaul Cases** represent an existential threat to the **"Federation Cartel"**, its subjugate state medical boards and their obscene/illegal profiteering at the expense of human life.

**The Association-In-Fact Enterprise:**

**105.** The pleading of an association-in-fact enterprise can be deduced from the pleading of the RICO predicate acts and the **"pattern of racketeering".** See <u>Boyle v United States, 129 S.Ct 2237 (2009)</u>, but additionally and pursuant to the <u>Boyle</u>, the elements of pleading are as follows:

**106.** <u>A purpose -</u>  the illegal bribery related dismissal with prejudice of K11-7 and the entry of a knowingly illegal nationwide 'injunction', the purpose of which was to prevent Plaintiff Kaul from further/fully exposing the long-standing crimes of **The Kaul Cases** Defendants, many of which resulted in the incarceration of principally ethnic minority physicians to whom the insurance industry owed money or who presented a competitive threat in the healthcare market.

**107.** <u>A relationships among those associated with the enterprise</u> – Defendant Oetken's relationship in the S.D.N.Y. with many of the NY-NJ political/Wall Street based Defendants and or individuals/entities associated with them extends back to his 2011 appointment to the federal bench. These corrupt relationships continued after the dismissal and did as a consequence of the dismissal and purported 'injunction' become even further fortified in their criminality. The quid pro quo dismissal purposed scheme committed in K11-7, and then in K11-17 (**Exhibit 14**) and the attempt in K11-20 evidence the ongoing nature of the association-in-fact enterprise

**(108)** <u>Longevity sufficient to permit these associates to pursue the enterprise's purpose</u> – the association-in-fact enterprises that preceded K11-7, that did continue in K11-7/K11-17 and now seeks to extend its racketeering effect into K11-20 do evidence a longevity that commenced in 2011. This longevity is ongoing in 2024 and will continue to operate unless Defendant Oetken is removed from the federal bench and held liable with his co-conspirators for the commission of crime within and 'under cover' of the United States District Court. The perils of permitting Defendant Oetken to continue to sit on the bench and issue knowingly fraudulent opinions that become incorporated into the fabric of American jurisprudence is that

they pervert/obstruct the natural course of justice in the United States, and violate Rules 144/455 as to his disqualification, a disqualification that he himself denied on August 14, 2023 (K11-7: D.E. 172).

109. As to the pleading requirements for an association-in-fact enterprise, the circuit splits on what exactly was required were clarified by the Supreme Court in Boyle:

110. "Such a group need not have a hierarchical structure or a chain of command; decisions may be made on an ad hoc basis and by any number of methods-by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must <u>function as a continuing unit and remain in existence long enough to pursue a course of conduct,</u> nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence. Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique; for example, a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach."

111. And so, in applying the <u>Boyle</u> standard to the instant matter, the motive/method of the USN Enterprise related relationships between the below identified Defendants and the co-conspirators is as follows: **(i)** Defendant Oetken – Defendant AGC; **(ii)** Defendant Oetken – Defendant MMB; **(iii)** Defendant Oetken – Co-conspirator Grewal; **(iv)** Defendant Oetken – Co-conspirator TD; **(v)** Defendant Oetken – Co-conspirator Geico; **(vi)** Co-conspirator TD – Co-conspirator Grewal; **(vii)** Co-conspirator TD – Co-conspirator Geico; **(viii)** Co-conspirator Geico – Co-conspirator Grewal; **(ix)** Co-conspirator MMB – Co-conspirator Grewal; **(x)** Co-conspirator MMB – Co-conspirator Geico; **(xi)** Co-conspirator MMB – Co-conspirator TD

**112.** <u>Purpose</u> – The overarching purpose of the post-revocation USN enterprise/scheme was to prevent Plaintiff Kaul from invalidating the illegal 2014 NJ revocation and all of its legal and non-legal sequalae, and from exposing the long-standing criminal history of **<u>The Kaul Cases</u>** Defendants, in which they had through schemes of politico-judicial corruption converted state persons/agencies into **"racketeering enterprises"** through which they perpetrated **"patterns of racketeering"** through the commission of RICO predicate acts, many of which resulted in the death and or incarceration of innocent physicians to whom money was owed.

**113** <u>Relationships among those associated with the enterprise</u> – The fundamental and common element that relates the Defendants and the co-conspirators is the fact that all fall into one of two categories, those being state actors with state power and private profit purposed actors seeking state power to further their economic and or political agendas. However, their common purpose was to prevent Plaintiff Kaul from exposing their commission of crime (2005-2014) as to the illegal revocation. In the period from 2014 to 2024, the crimes pertained to various schemes of judicial corruption/kidnapping/false indictment/false arrest/false imprisonment/attempted killing, all purposed to attempt to cover up the revocation related crimes (2005-2014).

**114.** Defendant <u>Oetken</u> illegally profited from illegally selling the power of the United States District Court in a series of quid pro quo schemes with co-conspirators <u>TD/Geico</u> who having participated in the revocation conspiracy by destroying Plaintiff Kaul's economic standing, did bribe Defendant Oetken to dismiss K11-7 and issue an 'injunction' purporting to prevent Plaintiff Kaul from seeking legal redress for the injuries to his life/liberty/property/reputation.

**115.** Co-conspirators TD/Geico were motivated to cause a corruption of Defendant Oetken in an attempt to provide cover for its revocation related crimes, in the knowledge that a public exposure of the crimes would injure their standing on the NYSE, their profits and subject their corporate officers to civil/criminal prosecution.

31

**116.** Defendant <u>Oetken</u> illegally benefitted from perverting the power of the United States District Court in a series of quid pro quo dismissal/purported 'injunction' schemes with co-conspirator <u>Grewal/others</u>, a purpose of which was to prevent Plaintiff Kaul from procuring further proof of the illegality of **The Kaul Cases** Defendant, New Jersey Board of Medical Examiners **("NJBME") 2014** revocation, a revocation the judicial-evidential confirmation of which would cause a nullification/reversal/compensation of the illegal revocation and every legal and non-legal injury subsequently caused to Plaintiff Kaul's life/liberty/property/reputation (2012-2024), in conjunction with the civil/criminal holding of **The Kaul Cases** Defendants.

**117.** Defendant <u>MMB</u>, benefitted from Defendant <u>Oetken's</u> illegal dismissal and purported 'injunction' in that being a subjugate member of the **"Federation Cartel"** it is as liable for the crimes of one member of the cartel, namely **The Kaul Cases** Defendant, NJBME, as if it had directly committed the crimes. Additionally, co-conspirator, MMB, benefitted from having Defendant <u>Oetken</u> dismiss K11-7, in that the dismissal was an effective validation, albeit false, of the illegal 2014 NJ revocation, a position that Defendant <u>MMB</u> used in a knowingly illegal manner to deny Plaintiff Kaul's licensure applications in 2020/2024, thus re-affirming its subjugation/felty to the **"Federation Cartel"**, from which its membership causes profit to its executives.

**(118)** <u>Longevity sufficient to permit these associates to pursue the enterprise's purpose</u> – The purpose of the USN enterprise is to maintain its highly lucrative monopoly power over the entire system of so called 'physician regulation and discipline', the very existence of which has been and is challenged by **The Kaul Cases,** including K11-20. This system was in existence prior to the 2005 commencement of the revocation conspiracy and was further fortified in or around 2008 by the eponymous 'Healthcare Fraud Prevention Partnership', a concoction of the insurance industry purposed to further subjugate the medical profession in order to increase shareholder/executive compensation of the insurance/hospital/pharmaceutical corporations through the exploitation and at the expense of the medical profession. The perpetration of this

scheme required a coopting of certain judges/courts to nullify/dismiss/injunct any physicians that challenged the illegal monopoly of the healthcare market by these exploitative for-profit corporations, who were fundamentally/illegally practicing medicine without a license, a condition that existed/exists consequent to their corrupt capture of the regulatory/judicial apparatus of state. All of these factors of consolidation of power have caused a longevity of existence/function such that their knowingly illegal antitrust conspiracies have continued without challenge, until **The Kaul Cases**, to the immense detriment of the public and medical profession.

**Bribery:**

**119.** K11-7 was filed on August 19, 2021, and shortly thereafter the K11-7 Defendants commenced communicating across the US wires and in face-to-face meetings as to the perpetration of a knowingly illegal quid pro quo bribery scheme with Defendant Oetken purposed to have him dismiss K11-7 with prejudice and issue a nationwide 'injunction' that would prevent Plaintiff Kaul from seeking redress for the crimes/violations committed against him (2005 onwards) by **The Kaul Cases** Defendants without Defendant Oetken's permission.

**120.** The conflicted absurdity of this proposition, that Plaintiff Kaul required the permission of a person at the center of the bribery related quid pro quo scheme, accounts in large part for the invalidity of the purported 'injunction' and the decision of Chief Judge Richard E. Meyers to admit the case into the jurisdiction of the E.D.N.C. with full knowledge of all matters related to Defendant Oetken's misconduct in K11-7.

**121.** It would be akin, and Plaintiff Kaul asserts this analogy with the greatest humility, to Nelson Mandela seeking permission from the 1988 apartheid South African President, P.W. Botha, to conduct the affairs of the African National Congress in the dismantling of the brutality/injustice of apartheid.

**122.** In the period from August to December 2021, the K11-7 Defendants had developed and agreed upon a scheme whereby to attempt to create cover the bribes would be transmitted by third party actors to law firms/public relations firms/political lobbyists and specifically to persons/politicians/lawyers with personal and or professional connections to Defendant Oetken, be those connections direct or indirect. In this manner the K11-7 Defendants hoped to create an opaqueness to their knowingly illegal scheme.

**123.** The bribes would originate from the Defendants bank accounts/other investment vehicles (off-shore and domestic) and would be materialized in Defendant Oetken's possession in a multitude of 'gifts/cash deposits in accounts of persons associated with him to third degree/payment of living expenses-mortgage-rent/travel expenses and other easily concealed hard assets, as was exposed in the criminal conviction of US Senator, Robert Menendez.

**124.** The bribes were paid in installments linked to the progress of K11-7, with the final bribe being transmitted in or around December 2022, when it became apparent Plaintiff Kaul had not appealed the corrupt order in the same court building of the circuit in which Defendant Oetken sat.

**125.** Defendant Oetken's chambers/courtroom are at 40 Foley Square, NY, NY, the location of the U.S.C.A. for the Second Circuit, and an appeals circuit on which Defendant Oetken had intermittently sat.

**126.** In a period from September 12, 2022, onwards, it became apparent to Defendant Oetken and **The Kaul Cases** Defendants that the bribery related scheme had failed, and the K11-17 Defendants had become the K11-20 Defendants.

**127.** And specifically in the period from June 27 to October 2024, there emerged new facts/new law that rendered illegal the 2014 NJ revocation and all of its legal/non-legal sequalae, including Defendant Oetken's September 12, 2022, purported 'injunction'.

**128.** The SCOTUS ruling in <u>Jarkesy</u> was violated by Defendant Oetken on October 2, 2024, when he issued his knowingly fraudulent order attempting to compel Plaintiff Kaul to dismiss K11-20 under threat of sanctions/contempt.

**129.** Defendant Oetken knew that <u>Jarkesy</u> rendered illegal the 2014 jury-less article III judge free revocation and all its legal/non-legal sequalae, but Defendant Oetken, in a knowingly blatant violation of the law, did enter his October 2, 2024, purported 'order' onto the K11-7 docket. And he did so in part because having entered the criminal conspiracy in 2022, the K11-7/K11-17/K11-20 Defendants threatened him with exposure if he failed to comply with their order.

**130.** And Defendant Oetken recognized and recognizes that such exposure would result in civil/criminal investigations and a re-opening/examination of all his prior cases, for <u>corrupt</u> judges who have sat on the bench for ten (10) years without permanent appellate elevation, develop a sense of frustration, omnipotence and entitlement to what they consider the 'spoils of war'. They lose sight of the immense/immeasurable civic value that they provide through their measured and impartial adjudication, and of the fact that their decisions form the bedrock of American jurisprudence, without which the appellate courts could not function.

**Wire Fraud:**

**131.** In a time period commencing in or around February 2022, Defendant Oetken/agents commenced using the US wires to transmit information to the K11-7 Defendants/agents regarding the perpetration of the knowingly illegal quid pro quo bribery scheme.

**132.** From February 2022 onwards, up to and including October 2024, Defendant Oetken/agents did continue to use the US wires to exchange information/facts as to the failure of the scheme in causing Plaintiff Kaul to crease his prosecution of **The Kaul Cases.**

**133.** Defendant Oetken and **The Kaul Cases** Defendants used the US wires in a knowingly illegal manner on thousands of occasions in the period commencing in February 2022 and continuing into October 2024.

**134.** In these communications, Defendant Oetken did, after having received the entirety of his bribes, express a reluctance to continue to use the authority of the United States District Court to continue perpetrating the scheme.

**135.** Defendant Oetken's reluctance stemmed from the fact that the prosecutorial authorities in the S.D.N.Y. had brought criminal indictments against a sitting US Senator (Robert Menendez) and NYS Mayor (Eric Adams) based on charges of public corruption and specifically engaging in bribery related quid pro quo schemes in which they sold the power of state in exchange for money/gifts/other tangible favors.

**136.** Defendant Oetken, now in a more desperate condition, having recognized that Plaintiff Kaul had exposed his criminal scheme in K11-18 and the ongoing criminal prosecutions of Menendez/Adams became less cautious in his communications with **The Kaul Cases** Defendants.

**137.** Defendant Oetken communicated that he was concerned that his corrupt activities on the bench would be submitted to the Office of the US Attorney for the S.D.N.Y.

**138.** Defendant Oetken used the US wires to communicate his fear that if the prosecutorial authorities subpoenaed his records, he would be charged with the same offenses levied against Menendez/Adams.

**139.** In the continued perpetration of the scheme and its attempted cover up, there were direct communications across the US wires between Defendant Oetken and **The Kaul Cases**

Defendants in which Defendant Oetken was threatened with exposure if he failed to follow the orders of **The Kaul Cases** Defendants.

140. In some of these communications, **The Kaul Cases** Defendants expressed immense fear as to the consequences to their lives of Plaintiff Kaul's continued prosecution of **The Kaul Cases**.

141. **The Kaul Cases** Defendants and most recently the K11-20 Defendants, did communicate their grave concerns that if they were deposed by Plaintiff Kaul, further evidence of their crimes would emerge.

142. The K11-20 Defendants, now in a similarly more desperate condition, abandoned all caution as to attempting to 'cover their tracks' and plainly stated that if Plaintiff Kaul were not stopped, they feared they would be indicted, as were Menendez/Adams.

143. The K11-20 Defendants did also use the US wires to transmit that if Plaintiff Kaul's prosecution were successful, officers for the corporate Defendants (Allstate/FSMB) would be held criminally liable.

144. The K11-20 Defendants did use the wires to communicate to each other possible alternative plans to eliminate Plaintiff Kaul if Defendant Oetken did not cooperate.

145. The K11-20 Defendants, in communicating these alternative Plaintiff Kaul elimination plans to Defendant Oetken, did indirectly threaten Defendant Oetken's life and the lives of those related to him to the third degree.

146. In these email communications to both Defendant Oetken's private and official emails, and the emails of his agents, the K11-20 Defendants communicated that if Defendant Oetken did not follow their orders, they would expose other highly incriminating evidence of his prior corrupt acts on the bench and of his homosexual personal life prior to and during his marriage.

**147.** Defendant Oetken, recognizing that his choice was to either comply with the K11-20 Defendants orders or accept the end of his judicial career and possible impeachment/indictment, did comply and use the US wires to issue a knowingly illegal purported order on October 2, 2024, once again threatening Plaintiff Kaul with contempt if he did not dismiss K11-20.

**Obstruction of Justice:**

**148.** Defendant Oetken, a lawyer and a jurist knew that when he entered the bribery related quid pro quo scheme with the K11-7 Defendants in or around February 2022, his acts did and would constitute an obstruction of justice.

**149.** Defendant Oetken knew that some elements of the crime of obstruction of justice to include the elements of there being an ongoing legal proceeding/an awareness of the ongoing legal proceeding/a criminal intent to interfere with the legal proceeding for criminal reasons/ a destruction of evidence (emails/texts/hand written notes)/a interference with witnesses (third parties) to cause a suppression of their testimony.

**150.** Defendant Oetken knew these elements and others because he has adjudicated many cases since 2011 involving obstruction of justice charges, charges/convictions for which has sentenced the perpetrators to jail.

**151.** Defendant Oetken knows the law and knows that he must obey the law.

**152.** Defendants Oetken swore oaths as a lawyer and as a jurist to uphold the Constitution and the law.

**153.** Defendant Oetken knew that in the perpetration of the bribery related quid pro quo scheme he violated not only his oaths, but committed felonies against which he has no immunity.

**154.** Defendant Oetken, while recognizing the immense risk of continuing to aid/abet the bribery related qui po quo scheme, did resign himself to the fact that he really had no choice.

**155.** Defendant Oetken's recognition of his desperate situation has made it difficult for him to concentrate on cases before him.

**156.** Defendant Oetken regrets having entered into conspiracy with **The Kaul Cases** Defendants, but accepts that eventually he will be subjected to a form of discipline and or punishment for having violated the Constitution/ the law/his solemn oaths/Plaintiff Kaul's human/civil/constitutional rights.

**157.** In fact, Defendant Oetken's desperation was evidenced when he/agents used the US wires to communicate with persons/entities invested in the company (www.wix.com) from which Plaintiff Kaul issued a release  on June 10, 2024, regarding K11-18 and Defendant Oetken's corrupt activities in the S.D.N.Y., to have Plaintiff Kaul's account deactivated.

**158.** Defendant Oetken , in issuing a knowingly illegal 'order' on October 2, 2024, did recognize that he was conflicted and without authority to issue such a document.

**159.** On October 3, 2024, Plaintiff Kaul submitted a letter in response to Defendant Oetken's October 2, 2024 'order' (**Exhibit 21**), which identifies the factual/legal bases as to the invalidity of the 'order'.

## 2. COUNT TWO

## DEPRIVATION OF RIGHTS UNDER COLOR OF LAW

## DEFENDANTS: OETKEN/MMB/AGC

**160.** In 2005, Plaintiff Kaul invented and successfully performed the first outpatient minimally invasive spinal fusion, a case/technique that revolutionized the field of spine surgery and has been for many years the standard of care.

**161.** This event and the consequent success caused Plaintiff Kaul's physician/hospitals/insurance competitors in the minimally invasive spine surgery market to view him, his outpatient surgical center, his technique, and his technique invention as a threat to their market share, and not being able to compete fairly/legally, did resort to committing judicial corruption/political corruption/public corruption/ bribery/perjury/evidential falsification/witness tampering/obstruction of justice/kickbacks/wire fraud/mail fraud/false indictments/false arrests/false imprisonment/kidnapping/attempted drugging-killing.

**162.** These events occurred over a time period from 2005 to 2023, in conjunction with ongoing/accruing and daily recurring and **"new"** violations of Plaintiff Kaul's human/civil/constitutional rights.

**163.** In causing the 2012/2014 illegal suspension/revocation of Plaintiff Kaul's NJ license, **The Kaul Cases** Defendants committed a theft of Plaintiff Kaul's intellectual property, from which have been generated/continue to be generated hundreds of millions, if not billions of dollars.

**164.** The above facts, in conjunction with those contained within the factual corpus of **The Kaul Cases** substantiate ongoing violations to a criminal standard of Plaintiff Kaul's fundamental right to life/liberty/property, his right to his hard-earned reputation and specifically, violations of the following rights:

**Violation of Civil Rights**

**Section 1983 claim**

**165.** In a period from September 12, 2022, to the present, Defendant Oetken did abuse state power in attempting to and in fact achieving in K11-10/K11-14 a knowing/willful/continuing violation and deprivation of Plaintiff Kaul's First Amendment Right of the United States Constitution, **CONSEQUENT TO** the illegal purported 'injunction' violating Plaintiff Kaul's right to litigate his claims/vindicate his rights in the United States District Court.

**166.** In a period from September 12, 2022, to the present, Defendant Oetken did abuse state power in attempting to and in fact achieving in K11-10/K11-14 a knowing/willful/continuing violation and deprivation of Plaintiff Kaul's Second Amendment Right of the United States Constitution, **CONSEQUENT TO** the illegal purported 'injunction' violating Plaintiff Kaul's right to litigate his claims/vindicate his rights in the United States District Court.

**167.** In a period from September 12, 2022, to the present, Defendant Oetken did abuse state power in attempting to and in fact achieving in K11-10/K11-14 a knowing/willful/continuing violation and deprivation of Plaintiff Kaul's Fourth Amendment Right of the United States Constitution, **CONSEQUENT TO** the illegal purported 'injunction' violating Plaintiff Kaul's right to litigate his claims/vindicate his rights in the United States District Court.

**168.** In a period from September 12, 2022, to the present, Defendant Oetken did abuse state power in attempting to and in fact achieving in K11-10/K11-14 a knowing/willful/continuing violation and deprivation of Plaintiff Kaul's Fifth Amendment Right of the United States Constitution, **CONSEQUENT TO** the illegal purported 'injunction' violating Plaintiff Kaul's right to litigate his claims/vindicate his rights in the United States District Court.

**169.** In a period from September 12, 2022, to the present, Defendant Oetken did abuse state power in attempting to and in fact achieving in K11-10/K11-14 a knowing/willful/continuing

violation and deprivation of Plaintiff Kaul's Sixth Amendment Right of the United States Constitution, **CONSEQUENT TO** the illegal purported 'injunction' violating Plaintiff Kaul's right to litigate his claims/vindicate his rights in the United States District Court.

170. In a period from September 12, 2022, to the present, Defendant Oetken did abuse state power in attempting to and in fact achieving in K11-10/K11-14 a knowing/willful/continuing violation and deprivation of Plaintiff Kaul's Eighth Amendment Right of the United States Constitution, **CONSEQUENT TO** the illegal purported 'injunction' violating Plaintiff Kaul's right to litigate his claims/vindicate his rights in the United States District Court.

171. In a period from September 12, 2022, to the present, Defendant Oetken did abuse state power in attempting to and in fact achieving in K11-10/K11-14 a knowing/willful/continuing violation and deprivation of Plaintiff Kaul's Fourteenth Amendment Right of the United States Constitution, **CONSEQUENT TO** the illegal purported 'injunction' violating Plaintiff Kaul's right to litigate his claims/vindicate his rights in the United States District Court.

172. These deprivations/violations willfully/maliciously caused by Defendant Oetken did illegally deprive/continue to deprive Plaintiff Kaul of the property of his livelihood by preventing its rectification through the judicial process.

173. These deprivations/violations willfully/maliciously caused by Defendant Oetken did illegally deprive/continue to deprive Plaintiff Kaul of the property of all his business real estate by preventing its rectification through the judicial process.

174. These deprivations/violations willfully/maliciously caused by Defendant Oetken did illegally deprive/continue to deprive Plaintiff Kaul of the property of all his personal real estate by preventing its rectification through the judicial process.

**175.** These deprivations/violations willfully/maliciously caused by Defendant Oetken did illegally deprive/continue to deprive Plaintiff Kaul of the property of all his <u>life earnings</u> by preventing its rectification through the judicial process.

**176.** These deprivations/violations willfully/maliciously caused by Defendant Oetken did illegally deprive/continue to deprive Plaintiff Kaul of the property of all his <u>pensions</u> by preventing its rectification through the judicial process.

**177.** These deprivations/violations willfully/maliciously caused by Defendant Oetken did illegally deprive/continue to deprive Plaintiff Kaul of the property of all his <u>financial investments</u> by preventing its rectification through the judicial process.

**178.** These deprivations/violations willfully/maliciously caused by Defendant Oetken did illegally deprive/continue to deprive Plaintiff Kaul of the property of all his <u>professional licenses</u> by preventing its rectification through the judicial process.

**179.** These deprivations/violations willfully/maliciously caused by Defendant Oetken did illegally deprive/continue to deprive Plaintiff Kaul of the property of all his <u>accounts receivable</u> BY preventing its rectification through the judicial process.

**180.** These deprivations/violations willfully/maliciously caused by Defendant Oetken did illegally deprive/continue to deprive Plaintiff Kaul of his right to <u>due process</u> **BY** preventing his access to discovery and substantive litigation process.

**181.** These deprivations/violations willfully/maliciously caused by Defendant Oetken did illegally deprive/continue to deprive Plaintiff Kaul of his right to <u>free speech</u> **BY** preventing his access to discovery and substantive litigation process.

43

**182.** These deprivations/violations willfully/maliciously caused by Defendant Oetken did illegally deprive/attempt to continue to deprive Plaintiff Kaul of his right to <u>impartial tribunals/judges/courts</u> **BY** continuing to perpetrate through certain courts within the United States District Court the corruptly procured K11-17 'Fraud on the Court' 'injunction', which has prevented Plaintiff Kaul's access to discovery and substantive litigation process.

**183.** These deprivations/violations willfully/maliciously caused by Defendant Oetken did illegally deprive/attempt to continue to deprive Plaintiff Kaul of his right to <u>substantively prosecute his claims</u> **BY** continuing to perpetrate through certain courts within the United States District Court the corruptly procured K11-17 'Fraud on the Court' 'injunction', which has prevented Plaintiff Kaul's access to discovery and substantive litigation process.

**184.** These deprivations/violations willfully/maliciously caused by Defendant Oetken did illegally deprive/attempt to continue to deprive Plaintiff Kaul of his right to <u>equal protection under the law</u> **BY** continuing to perpetrate through certain courts within the United States District Court the corruptly procured K11-17 'Fraud on the Court' 'injunction', which has prevented Plaintiff Kaul's access to discovery and substantive litigation process.

**185.** These deprivations/violations willfully/maliciously caused by Defendant Oetken did illegally deprive/attempt to continue to deprive Plaintiff Kaul of his right <u>to liberty</u> **BY** continuing to perpetrate through certain courts within the United States District Court the corruptly procured K11-17 'Fraud on the Court' 'injunction', which has prevented Plaintiff Kaul's access to discovery and substantive litigation process.

**186.** These deprivations/violations willfully/maliciously caused by Defendant Oetken did illegally deprive/attempt to continue to deprive Plaintiff Kaul of his right to be compensated for the illegal deprivation of the <u>property of eleven (11) years of his life</u> **BY** continuing to perpetrate through certain courts within the United States District Court the corruptly procured

44

K11-17 'Fraud on the Court' 'injunction', which has prevented Plaintiff Kaul's access to discovery and substantive litigation process.

**187.** These deprivations/violations/injuries were willfully/maliciously perpetrated by Defendant Oetken within/through/with the assistance of the executive/judicial apparatus of the American State.

**188.** These deprivations/violations/injuries were willfully/maliciously perpetrated by Defendant Oetken within/through/with the assistance of the United States District Court.

**189.** These deprivations/violations/injuries were willfully/maliciously perpetrated by Defendant Oetken in collusion/conspiracy with private actors associated with the New York Stock Exchange.

**190.** The commercial/communications nexus between Defendant Oetken and private actors within **The Kaul Cases**, critical to the perpetration of the within pled schemes conferred 'state actor' liability on all private actors within **The Kaul Cases** as to the deprivations/violations/injuries caused to Plaintiff Kaul's human/civil/constitutional rights.

**191.** The commercial/communications nexus between Defendant Oetken and private actors within **The Kaul Cases**, critical to the perpetration of the within pled schemes conferred 'state actor' liability on all private actors within **The Kaul Cases** as to the deprivations/violations/injuries caused to Plaintiff Kaul's property rights.

**192.** Defendant Oetken and **The Kaul Cases** Defendants were and are motivated to commit and continue to commit these deprivations/violations/injuries to Plaintiff Kaul's human/civil/constitutional/property rights.

**193.** The motivation is based on Defendant Oetken and **The Kaul Cases** Defendants scheme to prevent Plaintiff Kaul from exposing their crimes, including those of <u>defrauding the global equities market</u>.

<u>UN Human Rights Violation</u>

<u>The United Nations Universal Declaration of Human Rights</u>

**194.** Defendant Oetken and **The Kaul Cases** Defendants-Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to <u>Article 1</u> of the United Nations Universal Declaration of Human Rights: **"All human beings are born free and equal in dignity and rights. They are endowed with reason and conscience and should act towards one another in a spirit of brotherhood."**

**195.** The <u>Article 1</u> violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

**196.** Defendant Oetken and **The Kaul Cases** Defendants-Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to <u>Article 2</u> of the United Nations Universal Declaration of Human Rights. Plaintiff Kaul is a citizen of India: **"Everyone is entitled to all the rights and freedoms set forth in this Declaration, without distinction of any kind, such as race, color, sex, language, religion, political or other opinion, national or social origin, property, birth, or other status. Furthermore, no distinction shall be made on the basis of the political, jurisdictional, or international status of the country or territory to which a person belongs, whether it be independent, trust, non-self-governing or under any other limitation of sovereignty."**

**197.** The <u>Article 2</u> violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

46

**198.** Defendant Oetken and **The Kaul Cases** Defendants-Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 3 of the United Nations Universal Declaration of Human Rights: **"Everyone has the right to life, liberty and security of person."**

**199.** The Article 3 violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

**200.** Defendant Oetken and **The Kaul Cases** Defendants-Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 4 of the United Nations Universal Declaration of Human Rights: **"No one shall be held in slavery or servitude; slavery and the slave trade shall be prohibited in all their forms."**

**201.** The Article 4 violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

**203.** Defendant Oetken and **The Kaul Cases** Defendants-Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 5 of the United Nations Universal Declaration of Human Rights: **"No one shall be subjected to torture or to cruel, inhuman or degrading treatment or punishment."**

**204.** The Article 5 violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

**205.** Defendant Oetken and **The Kaul Cases** Defendants-Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 6 of the United Nations Universal Declaration of Human Rights: **"Everyone has the right to recognition everywhere as a person before the law."**

**206.** The Article 6 violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

**207.** Defendant Oetken and **The Kaul Cases** Defendants-Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 7 of the United Nations Universal Declaration of Human Rights: **"All are equal before the law and are entitled without any discrimination to equal protection of the law. All are entitled to equal protection against any discrimination in violation of this Declaration and against any incitement to such discrimination."**

**208.** The Article 7 violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

**209.** Defendant Oetken and **The Kaul Cases** Defendants-Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 8 of the United Nations Universal Declaration of Human Rights: **"Everyone has the right to an effective remedy by the competent national tribunals for acts violating the fundamental rights granted him by the constitution or by law."**

**210.** The Article 8 violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

**211.** Defendant Oetken and **The Kaul Cases** Defendants-Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 9 of the United Nations Universal Declaration of Human Rights: **"No one shall be subjected to arbitrary arrest, detention or exile."**

**212.** The Article 9 violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

**213.** Defendant Oetken and **The Kaul Cases** Defendants-Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 10 of the United Nations Universal Declaration of Human Rights: **"Everyone is entitled in full equality to a fair and public hearing by**

an independent and impartial tribunal, in the determination of his rights and obligations and of any criminal charge against him."

**214.** The <u>Article 10</u> violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

**215.** Defendant Oetken and **The Kaul Cases** Defendants-Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to <u>Article 12</u> of the United Nations Universal Declaration of Human Rights: **"No one shall be subjected to arbitrary interference with his privacy, family, home, or correspondence, nor to attacks upon his honor and reputation. Everyone has the right to the protection of the law against such interference or attacks."**

**216.** The <u>Article 12</u> violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

**217.** Defendant Oetken and **The Kaul Cases** Defendants-Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to <u>Article 17</u> of the United Nations Universal Declaration of Human Rights: **"1. Everyone has the right to own property alone as well as in association with others. 2. No one shall be arbitrarily deprived of his property."**

**218.** The <u>Article 17</u> violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

**219.** Defendant Oetken and **The Kaul Cases** Defendants-Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to <u>Article 19</u> of the United Nations Universal Declaration of Human Rights: **"Everyone has the right to freedom of opinion and expression; this right includes freedom to hold opinions without interference and to seek, receive and impart information and ideas through any media and regardless of frontiers."**

**220.** The <u>Article 19</u> violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

**221.** Defendant Oetken and **The Kaul Cases** Defendants-Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 23 of the United Nations Universal Declaration of Human Rights: **"Everyone has the right to work, to free choice of employment, to just and favorable conditions of work and to protection against unemployment."**

**222.** The Article 23 violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

**223.** Defendant Oetken and **The Kaul Cases** Defendants-Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 23 of the United Nations Universal Declaration of Human Rights: **"Everyone has the right to a standard of living adequate for the health and well-being of himself and of his family, including food, clothing, housing and medical care and necessary social services, and the right to security in the event of unemployment, sickness, disability, widowhood, old age or other lack of livelihood in circumstances beyond his control."**

**224.** The Article 23 violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

**225.** Defendant Oetken and **The Kaul Cases** Defendants-Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 28 of the United Nations Universal Declaration of Human Rights: **"Everyone is entitled to a social and international order in which the rights and freedoms set forth in this Declaration can be fully realized."**

**226.** The Article 28 violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

**227.** Defendant Oetken and **The Kaul Cases** Defendants-Co-Conspirators did knowingly and maliciously violate Plaintiff Kaul's rights pursuant to Article 30 of the United Nations Universal Declaration of Human Rights: **"Nothing in this Declaration may be interpreted as implying for any State, group or person any right to engage in any activity or to perform any act aimed at the destruction of any of the rights and freedoms set forth herein."**

228. The <u>Article 30</u> violation caused and continues to cause deprivations/violations/injuries to Plaintiff Kaul's human/constitutional/property rights.

## DECLARATIONS AND INJUNCTIVE RELIEF

**1.** The legal record in K11-20 has established by a preponderance of the evidence that the September 22, 2022, purported 'injunction' issued by U.S.D.J. Oetken in K11-7 is an admitted **'Fraud on the Court'.**

**2.** The United States District Court for the Southern District of Texas-Houston Division did nullify the purported 'injunction' within its jurisdiction, when it admitted the case on August 26/30, 2024.

**3.** The United States District Court for the Southern District of Texas-Houston Division did nullify the purported 'injunction' within its jurisdiction when it issued its March 13, 2024, **ORDER FOR DISCOVERY PLAN (Exhibit 5).**

**3.** The nullification of the purported 'injunction' within the jurisdiction of the United States District Court for the Southern District of Texas-Houston Division, has rendered the purported 'injunction' a legal nullity within the Southern District of Texas-Houston Division without legal effect or existence.

**4.** Therefore, the nullity and legal non-existence of the purported 'injunction' quite logically means that Plaintiff Kaul could not have violated any purported 'injunction within the jurisdiction of the United States District Court for the Southern District of Texas-Houston Division

**5.** Therefore, the nullity and legal non-existence of the purported 'injunction' quite logically means that Plaintiff Kaul's continued prosecution of K11-17 within the United States District Court for the Southern District of Texas-Houston Division does not, nor could not, violate any injunction.

**6.** Plaintiff Kaul's human/civil/constitutional rights and the controlling doctrinal law of 'Fraud on the Court' strictly prohibit Defendant Oetken from using the instrumentality of his purported 'injunction' in any manner to infringe on Plaintiff Kaul's human, civil and or constitutional rights to vindicate and or secure his right to his life/liberty/property/reputation.

**7.** Defendant Oetken is prohibited from attempting to use the purported 'injunction', an admitted 'Fraud on the Court, to cause injury or infringe on Plaintiff Kaul's person and or violate his human/civil/constitutional rights within the jurisdiction of the United States.

**8.** Defendant Oetken is ordered to immediately cease and desist from any further interference in the judicial process of the United States District Court for the Southern District of Texas-Houston Division.

**9.** Defendant Oetken's published October 2, 2024 'ORDER' in K11-20, a product of the K11-7 September 12, 2022 'Fraud on the Court' purported injunction is itself a 'Fraud on the Court', and is thus null/void for all intents/purposes.

**10.** Defendant Oetken's nullified 'Fraud on the Court' October 2, 2024 'ORDER' that was generated and filed in K11-7 by Defendant Oetken, and then filed in K11-20 by the K11-20 Defendants on October 3, 2024 (**Exhibit 22**) constitutes a flagrant violation of Plaintiff Kaul's human/civil/constitutional rights to vindicate and or secure his right to his life/liberty/property/reputation.

**11.** Defendant Oetken is ordered to strike from the K11-7 docket the illegally generated and nullified 'Fraud on the Court' October 2, 2024 'ORDER'.

Plaintiff Kaul swears under penalty of perjury that the above statements are true and accurate to the best of my knowledge and that if it is proved that I willfully and knowingly misrepresented the facts, then I will be subject to punishment.

DATED: OCTOBER 8, 2024

_____
RICHARD ARJUN KAUL, MD

# K11-23
# KAUL v OETKEN