IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RICHARD ARJUN KAUL, MD;  PLAINTIFF
JANE DOE; JOHN DOE

v.  CAUSE NO. 3:24-CV-621-CWR-LGI

THE HONORABLE JAMES PAUL  DEFENDANTS
OETKEN (PERSONAL AND OFFICIAL
CAPACITY); MISSISSIPPI MEDICAL
BOARD; NEW YORK STATE
ATTORNEY GRIEVANCE COMMITTEE;
JANE DOE; JOHN DOES

## ORDER

Before the Court are motions to dismiss filed by Judge James Paul Oetken and the New York State Attorney Grievance Committee. Docket Nos. 12 and 15. For the reasons that follow, the motions are due to be granted.

**I.   Background**

The New Jersey Medical Board revoked Richard Arjun Kaul's medical license in 2014. Since then, he has filed numerous lawsuits against those he believes unlawfully deprived him of his ability to practice medicine. In this suit, he argues that Judge Oetken, the Mississippi Medical Board, and the New York State Attorney Grievance Committee conspired against him to continue preventing him from practicing medicine. He brings claims under the Racketeer Influence Corrupt Organizations Act ("RICO"), Section 1983[1], and the United Nations Declaration of Human Rights.

---

[1] Kaul's § 1983 claim against Judge Oetken is better understood as a claim brought under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), as Judge Oetken is a federal official.

Kaul's complaint stems from Judge Oetken's order dismissing a separate case. *See Kaul v. Intercontinental Exch.*, No. 21-CV-6992 (JPO), 2022 WL 4133427, at *1 (S.D.N.Y. Sept. 12, 2022). He alleges that Judge Oetken's decision aligns with a pattern of racketeering that has been ongoing since 2014. He also alleges that the Grievance Committee became a part of this scheme when it failed to investigate Judge Oetken's decision and refer him to the appropriate prosecutorial authority.

Judge Oetken and the Grievance Committee have separately moved to dismiss Kaul's complaint.[2] Their respective positions are discussed below.

## II. Discussion

Assuming without deciding that Kaul could remedy any procedural defects, both motions are granted because Judge Oetken and the Grievance Committee are immune from suit.

### A. Judge Oetken is immune from suit for actions taken in his judicial capacity.

"Judicial immunity is an immunity from suit and not just from the ultimate assessment of damages." *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) (citing *Mireles v. Waco*, 502 U.S. 9, 9 (1991)). Judicial immunity is concerned with the judge's actions alone, thus it "is not overcome by allegations of bad faith or malice and applies even when the judge is accused of acting maliciously and corruptly." *Id.* (citation modified). In fact, a judge retains immunity in all but two scenarios: (1) "a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity" and (2) "a judge is not immune from actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.*

---

[2] The Mississippi Medical Board is also a party to this suit; however, it has not filed a motion to dismiss.

2

To determine whether Judge Oetken acted within his judicial capacity, the Court must consider:

> (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.

*Id.*

Having reviewed Kaul's well-pleaded allegations[3], and drawn all reasonable inferences in his favor, the crux of his complaint is that Judge Oetken misapplied the Supreme Court's holding in *SEC v. Jarkesy*, 603 U.S. 109 (2024). He submits that a proper reading of *Jarkesy* would have warranted reversal of the 2014 New Jersey decision which, in turn, would have allowed Mississippi to grant his application for a medical license.

Interpreting the law is a judge's key responsibility. Thus, it was a judicial function for Judge Oetken to determine the applicability, or lack thereof, of Supreme Court precedent. His decision does not deprive him of judicial immunity. The remaining factors also support a finding of immunity because the allegations concern a case Judge Oetken was presiding over. Kaul has not alleged any nonjudicial conduct that would otherwise deprive Judge Oetken of his immunity. Therefore, Judge Oetken's motion to dismiss is granted.

### B.  Kaul's claims against the Grievance Committee are barred by the Eleventh Amendment.

The Grievance Committee argues that it is entitled to sovereign immunity.

---

[3] The Court is not persuaded by Kaul's allegation of "a quid pro quo bribery scheme" as this is a legal conclusion for which he has not provided any underlying facts. *See Ashcroft*, 556 U.S. at 664 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

"The Eleventh Amendment's grant of sovereign immunity extends to state agencies that are deemed arms of the state." *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 648, 688-89 (5th Cir. 2002) (citation modified). To determine whether an entity is an arm of the state and thus entitled to Eleventh Amendment immunity, the Court considers six factors: (1) whether the state statutes and case law characterize the agency as an arm of the state; (2) the source of funding for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local rather than state-wide problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property. *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147 (5th Cir. 1991). A defendant need not satisfy all the factors to benefit from the Eleventh Amendment, and some factors weigh more heavily than others. *Hudson v. City of New Orleans*, 174 F.3d 677, 681–82 (5th Cir.1999).

The Grievance Committee maintains that it is an arm of the state because it was authorized by the legislature and receives funding from the state. It points to caselaw from a New York district court and the Second Circuit to support its position. *See Sassower v. Mangano*, 927 F. Supp. 113, 121 (S.D.N.Y. 1996); *see also Zuckerman v. App. Div.*, 421 F.2d 625, 626 (2d Cir. 1970). This Court agrees, as the Grievance Committee is an entity created by the laws of New York and charged with the ability to investigate and prosecute complaints of professional misconduct against lawyers. Kaul has not shown that New York has abrogated its immunity such that he can sustain a suit against the Grievance Committee. The Grievance Committee's motion to dismiss is granted on this ground.

## VI. Conclusion

The Court has considered all arguments; those not addressed would not have altered the disposition of this case. Judge Oetken and the Grievance Committee's motions to dismiss are granted.[4]

**SO ORDERED**, this the 12th day of June, 2025.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[4] Because all claims against Judge Oetken have been resolved, the Clerk of Court is instructed to terminate the motion for voluntary dismissal, Docket No. 38, as moot. The Mississippi Medical Board remains a party to this action. The Board is directed to respond to Kaul's motion to lift stay, Docket No. 43, within 5 days. Additionally, within 10 days the parties shall contact the chambers of the Magistrate Judge for entry of a Case Management Order.